

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARK ANTHONY NOE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:12-CV-743-A |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Mark Anthony Noe, a state prisoner currently incarcerated in Fort Stockton, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

I. PROCEDURAL HISTORY

In February 2009 petitioner was charged by indictment with one count of aggravated sexual assault of a child younger than 14 years of age (Count One) and indecency with a child (Count Two),

in the Criminal District Court Number One of Tarrant County, Texas, in Case No. 1124603D. (State Habeas R. at 65)[1] On May 11, 2009, pursuant to a plea bargain agreement, petitioner pleaded guilty to Count One, and the trial court placed him on ten years' deferred adjudication community supervision, ordered him to pay a fine and costs, and entered conditions of his community supervision, including sex offender requirements. (*Id.* at 66-84) Petitioner did not directly appeal the deferred adjudication judgment or conditions.

On January 29, 2010, the state filed a petition to proceed to adjudication of guilt, containing ten paragraphs alleging various violations of petitioner's community supervision. (*Id.* at 85-88) At the revocation hearing on March 4, 2010, petitioner signed "Written Plea Admonishments on Motion to Revoke Community Supervision or Petition to Proceed to Adjudication" and entered an open plea to the trial court regarding punishment. (State Habeas R. at 90-93) As to the alleged violations, petitioner pleaded true to paragraphs one, two, three, four, six, and nine of the petition and not true to paragraphs five, seven, and eight. (RR, vol. 1, at 6-11) The trial court did not question

---

[1] "State Habeas R." refers to the state court record of petitioner's state habeas application no. WR-78,216-01.

petitioner regarding paragraph ten, as agreed by the parties. (*Id.* at 11) Petitioner's community supervision officer, Brittany Smith, testified on behalf of the state, and petitioner testified on his own behalf. (*Id.* at 12-80) At the conclusion of the hearing, the trial court adjudicated petitioner's guilt and assessed his punishment at 25 years' confinement. (*Id.* at 81; State Habeas R. at 94)

Petitioner appealed the trial court's judgment adjudicating his guilt, but the Eighth District Court of Appeals of Texas affirmed the trial court's judgment, and on September 14, 2011, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Noe v. State*, No. 08-10-00109-CR, slip op., at 3 n.2 (Tex. App.-Feb. 9, 2011) (not designated for publication); *Noe v. State*, PDR No. 448-11. Petitioner also filed a postconviction application for writ of habeas corpus in state court, raising one or more of the claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (State Habeas R. at cover, 2) This federal petition for habeas relief followed.

## II. Issues

Petitioner raises two grounds for relief. In the first, he

claims he received ineffective assistance of counsel because counsel (1) violated his Sixth Amendment rights to counsel, confrontation of witnesses, and compulsory process, and (2) caused him to be charged with a more serious offense, which he did not commit or admit. (Pet., Insert, first page) In the second, he claims his 25-year sentence constitutes cruel and unusual punishment. (Pet. at 6 & Insert)

### III. RULE 5 STATEMENT

As a preliminary matter, respondent claims petitioner's ineffective assistance claims that counsel violated his Sixth Amendment rights to confrontation and compulsory process, under ground (1), were not exhausted in state court and are procedurally defaulted. (Resp't Ans. at 4-7) However, a review of petitioner's state habeas application reveals the issues were raised, and sufficiently exhausted, in his state habeas application. (State Habeas R. at 10) Furthermore, a federal habeas petition may be denied on the merits, notwithstanding the failure to a petitioner to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).[2]

---

[2]Petitioner does not raise a limitations argument regarding claims related to petitioner's original plea proceedings; thus, the defense is not discussed herein.

4

## IV. DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 1. Ineffective Assistance of Counsel

Petitioner generally claims trial counsel caused him to be charged with a more serious offense, which he did not commit or admit to, and violated his Sixth Amendment rights to counsel, confrontation of witnesses, and compulsory process. (Pet., Insert, first page)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective

standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Petitioner was represented by David A. Pearson IV during the original plea proceedings and John C. Beatty during the revocation proceedings. The state habeas court conducted a hearing by affidavit and entered findings of fact, based largely on counsel's affidavits, refuting petitioner's ineffective assistance claims. These findings were adopted by the Texas Court of Criminal Appeals. Petitioner has failed to present convincing evidence or compelling argument in rebuttal; thus this court defers to those findings.

Petitioner claims Pearson was ineffective by causing him to be charged with a more serious offense, which he did not commit

or admit to, and advising and allowing him "to sign guilty for it." (Pet., Insert, first page[3]) Counsel Pearson responded by affidavit as follows:

> Counsel fully informed Noe of the exact charge for which he was indicted, aggravated sexual assault of a child. Noe claims Counsel did not inform him that he was being charged with a "more serious crime than what I was originally told." Counsel disagrees with this contention, because from the first date of his appointment to represent Noe the charge was aggravated sexual assault of a child, a first degree felony. Counsel from the very beginning of consulting with Noe informed Noe of the exact charge. Noe knew exactly the charge he faced. Counsel fully informed Noe that the punishment range, if he was convicted, was 5 years up to 99 years of Life in the penitentiary.
>
> Counsel never "threatened" Noe with any outcome. Counsel also did not coerce Noe to plead guilty by "threats or physical violence," or by threatening what might happen to Noe in prison due to the nature of the charge. Counsel merely, as required by the law, fully and adequately advised Noe of the potential outcomes. Counsel advised Noe he had an absolute right to a jury trial, including the option to request the jury set punishment, if he was convicted. As with all clients who face potential sentencing, Counsel tried to re-enforce Noe's understanding of the wide punishment range by emphasizing that a jury or judge could sentence anywhere in the available punishment range.
>
> Counsel advised Noe of the plea bargain offer for deferred adjudication that Noe eventually accepted. Prior to that offer, Counsel advised Noe of the State's plea bargain offer that Noe accept fifteen (15) years confinement, and Noe rejected that offer. Counsel also advised Noe that a conviction and sentence would

---

[3]The insert is not paginated.

8

require that Noe serve one-half of the sentence flat, minimum 2 years flat and up to 30 years flat, before he would be eligible for parole.

Counsel fully apprised Noe of all his constitutional and statutory rights contained in the written plea admonishments form. Counsel signed his affirmation that he fully informed Noe of all the court admonishments, rights, waiver, and Noe's judicial confession. Early in the court proceedings, Counsel also explained and signed and Noe signed acknowledging the *Consultation Setting Plea Offer Acknowledgment*, in which the punishment range is 5 to 99 years, up to Life, confinement in prison.

Noe claims that Counsel advised him to accept the ten-year deferred adjudication offer for a crime he did not commit. This is false. The State's file reflected that Noe admitted to the case detective that he had sexual contact with the victim. When Counsel was first appointed, he requested and the State made the arrest warrant affidavit available to Counsel. The State notified Counsel by email on 13 November 2008 that the arrest warrant affidavit was available for defense review. By that warrant affidavit Counsel learned that the case detective claimed that Noe admitted in an interview with that detective that Noe had sexual contact with the victim on four occasions in June and July 2008. The victim made several outcry statements that Noe had put his penis in her mouth. The victim also drew a picture for her mother that her mother recognized as a penis with hair around it. This picture was preserved as evidence and made available for defense review, along with all the police reports, witness statements, and sexual abuse medical protocol report by Cook Children's Medical Center. The case detective also preserved a letter that Noe purportedly told the detective Noe wrote to his family. The detective made a copy of the letter and Noe signed and numbered each page. This letter was preserved for evidence. In the letter, Noe admitted putting the child's hand on his penis, and stated that ". . . I did wrong. I just wanted or was just looking for something

evil to do . . ." Counsel fully reviewed the entire state's case file, including all reports, witness statements, sexual abuse medical protocol report, and anticipated evidence exhibits. Counsel had multiple conferences with Noe, both in Counsel's office and at the courthouse.

In order to prepare for jury trial, in case a guilt finding was returned, Counsel sought expert assistance ex parte from the trial court. Counsel attained the trial court approval and funding under seal, in order to attain without the state's knowledge a psychosexual assessment of Noe by a state-licenced psychotherapist. The purpose of this assistance was to attempt to establish that if convicted, Noe could show he was a good candidate for probation by showing that he had already been assessed and recommended for treatment by a licensed sex offender treatment provider. Noe was informed and agreed to this option. He fully cooperated with the therapist, who reported to Counsel by written report protected under attorney-client privilege and attorney work-product confidentiality. The therapist's report included an approximation of Noe's intellectual capabilities. The report indicated Noe's IQ of 105 pleaced him in the Average Range of intellectual capabilities, so Counsel had no concerns that Noe was not adequately understanding his options and various defense strategies. The therapist's report also indicated that Noe showed potentially positive response to sex offender treatment, partly based upon his acknowledging sexual behaviors with the victim. Noe admitted to the therapist that there were three or four incidents involving sexual contact over a two week span.

Counsel had practiced for over 18 years at the time he was representing Noe, nearly exclusively criminal defense. Counsel has defended many, many criminal cases in his career and he has never once failed to appreciate, advise, and respect a client as to the client's personal choice regarding his plea, to the client's choice for a jury trial, and/or whether the client testifies in his own defense. Counsel's

habit in criminal defense has always been to instruct
clients that these personal choices always belong to
the client and remain inviolate. Noe was never told to
plead guilty to a crime he did not commit. As
reflected by the written plea admonishments and
affirmed by Counsel, Noe's plea was knowingly, freely,
and voluntarily entered. Furthermore, as reflected in
the judicial confession, Noe affirmed that all facts
alleged in the indictment were true and correct, and
that he was guilty of the instant offense.

    Noe contends that Counsel advised Noe to plead
guilty to a crime he did not commit. That contention
is false. It is not Counsel's role to decide "guilt"
and to then instruct a client he must plead
accordingly. A decision of "guilt" is the job of the
Judge or a Jury. Counsel had several discussions with
Noe regarding Counsel's understanding from his own
investigation of the evidence Noe could expect to hear
and see at trial. Counsel believes he fulfilled his
obligations with Noe to fully discuss all the facts and
circumstances and legal implications regarding the
case, such that Noe was able to make a knowing and
informed and voluntary decision about his best course
of action.

    Undersigned Counsel does not believe he was
ineffective in representing Applicant, Mark Noe.

(State Habeas R. at 35-41) (citation to appendix omitted)

The state habeas court entered findings consistent with counsel Pearson's affidavit, and, applying the *Strickland* standard, concluded that counsel properly advised petitioner regarding the level of his charges and the potential range of punishment, that petitioner was fully apprised of the reasons for entering a guilty plea and voluntarily agreed to enter that plea,

11

that petitioner waived his right to the appearance, confrontation and cross-examination of witnesses, and that petitioner's guilty plea was freely and voluntarily entered and based on proper and adequate advice of counsel. (*Id.* at 46-51) Deferring to the state court's findings of fact, the state courts' adjudication of the claims against counsel is not contrary to or involve an unreasonable application of *Strickland*.

Before a trial court may accept a guilty plea, the court must ensure that the defendant is advised of the consequences of his plea and the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

The record in this case does not demonstrate that petitioner's guilty plea was in any way induced by misrepresentation on Pearson's part regarding petitioner's rights

12

and waivers or the level of offense and penalty range for the offense. Petitioner's claims against counsel after the fact, in and of themselves, are insufficient to rebut the presumption that he received effective assistance of counsel, the presumption his plea was knowing and voluntary, and the presumption of regularity of the state court records. *See United States v. Oliver*, 630 F.3d 397, 414 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 758 (2011); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity").

Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. *Libretti v. United States*, 516 U.S. 29, 50-51 (1995). Often a criminal defendant, even if he is unwilling or unable to admit his guilt, will agree to plead guilty to an offense, having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a defendant does not render counsel's representation deficient or a plea unknowing or involuntary. *North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *Brady v. United States*, 397 U.S. 742, 749-50 (1970).

13

Petitioner claims Beatty was ineffective by violating his Sixth Amendment rights to counsel, confrontation of witnesses, and compulsory process. (Pet., Insert, first page) Counsel Beatty responded by affidavit as follows:

> Applicant claims Affiant "did not prepare for [his] probation revocation hearing." I deny that accusation. It is true that I represented Applicant for "less than a month"; specifically twenty nine days. It is also true that I conveyed the State's settlement of twenty five years and told Applicant he could accept the offer, make a counter-offer, or have a hearing. He chose the latter and I honored his decision.
>
> In preparation for the revocation hearing, I did the followings:
>
> 1. Reviewed the entirety of Applicant's probation file maintained by the Adult Probation Department and copied documents relevant to the alleged infractions.
> 2. Conferenced with probation officer Maria Luna on two occasions.
> 3. Conferenced with Assistant District Attorney Kevin Boneberg on three occasions.
> 4. Reviewed the anticipated State's exhibits with Applicant.
> 5. Reviewed the fifteen page chronological record of the probation department's interaction with Applicant and his performance while on probation.
> 6. Reviewed Applicant's seven page letter summarizing his position on all allegations.
> 7. Conferenced with Applicant on three occasions and prepared his testimony.
>
> Had I not in fact prepared as previously alleged, how could I have:
>
> 1. Known to cross-examine the probation officer on Applicant's "low risk" classification as a sex

>               offender, as determined by the Static-99
>               assessment instrument.
>         2.    Established in cross-examination that Applicant's
>               attendance in sex-offender counseling had been
>               compliant and faithful, i.e., it "wasn't an
>               issue."
>
>         Applicant also contends . . . that "no witnesses
>    would be allowed to speak on [his] behalf or on behalf
>    of the defense." I further deny that accusation.
>    Contrary to Applicant's assertion, the Applicant chose
>    to testify and did so. When he began his direct
>    testimony, Applicant agreed that we had "discussed on a
>    number of occasions [his] petition and the alleged
>    violations. Furthermore, he knew he was not required
>    to testify and could decline same.
>
>         Applicant informed Affiant that there were no
>    additional witnesses he wanted to testify.
>
>            . . .
>
>         For all the reasons aforestated, Affiant denies
>    that he was unprepared and/or ineffective. I did what
>    I could to assist Applicant in the revocation matter
>    and to put Applicant's admitted violations in the most
>    favorable light possible.

(State Habeas R. at 33-34) (record citations omitted)

The state habeas court entered findings consistent with counsel Beatty's affidavit, and, applying the *Strickland* standard, concluded that counsel fully prepared for petitioner's adjudication hearing, did not advise petitioner witnesses would not be able to testify on his behalf, and provided petitioner with adequate representation as required by the Sixth Amendment. (*Id.* at 52-55) Deferring to the state court's findings, the

15

state courts' adjudication of the claims is not contrary to or involve an unreasonable application of *Strickland*.

Furthermore, petitioner's are claims are conclusory, with no factual or legal development. Such allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Green v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996).

## 2. Cruel and Unusual Punishment

Petitioner claims his 25-year sentence constitutes cruel and unusual punishment for a "first time technical violation" and in light of the fact that he is a "first time, low-level, non-violent offender." (Pet., Insert, second page)

The Eighth Amendment prohibits a sentence that is grossly disproportionate to the severity of the crime for which it is imposed. *Solem v. Helm*, 463 U.S. 277, 288 (1983). When evaluating an Eighth Amendment proportionality challenge, the court makes a threshold comparison between the gravity of the charged offense and the severity of the sentence. *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992). In non-capital cases, successful challenges to the proportionality of particular sentences are "exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

Petitioner pleaded guilty and judicially confessed to a first degree felony, which carries a sentencing range of 5 to 99 years, or life, imprisonment. TEX. PENAL CODE ANN. §§ 12.32 & 22.021(e) (West 2011 & Supp. 2012). His sentence is in the mid to low end of the range of punishment for the offense, which is a "convincing objective indicator of proportionality." *United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1134 (5th Cir.1993). Additionally, petitioner admittedly initiated four sexual encounters over a two-week period with the six-year-old daughter of his longtime girlfriend, and pleaded guilty to the allegation that he penetrated the mouth of the victim with his sexual organ. (State Habeas R. at 39-40; RR, vol. 1, at 29, 62-63) Under these circumstances, petitioner's 25-year sentence is not grossly disproportionate to the severity of the offense committed as to constitute cruel and unusual punishment.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for

the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED January 30, 2013.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE